[No. 1751.]

## C. R. White v. The State.

Theft — Practice. — Charge of the Court in a theft case was as follows: " If a part of the alleged stolen property was found and identified as such, the theft of the remainder might be inferred from that fact, if all of the property is shown to have been stolen at the same time and place." *Held*, error, as being a charge upon the weight of evidence, and therefore an invasion of the exclusive province of the jury, who alone are authorized to draw inferences from the evidence, and that, too, independent of judicial interference. *Held*, further, that, the defendant having promptly excepted to the charge, the judgment must be reversed.

Appeal from the District Court of Maverick. Tried below before the Hon. T. M. Paschal.

The conviction in this case was for the theft of $20 in money, the property of P. A. Joiner, in Maverick county, Texas, on the

28th day of May, 1884. A term of two years in the penitentiary was the punishment assessed against the appellant.

P. A. Joiner was the first witness for the State. He testified that, on or about the day alleged in the indictment, he, the witness, the defendant, Mr. G——, and Mr. Dubose, were in the saloon of Archie Zarkouski, near the depot in the town of ——, Maverick county, Texas. Mr. Bethel came into the saloon, and asked Dubose to lend him $20. Dubose took out his pocket-book, and, finding he had but $15, asked the witness to lend him $5 to make up the amount asked for by Bethel. Witness, who was working in the saloon, keeping bar, went behind the bar, got a five-dollar bill and gave it to Dubose. Dubose then threw a ten and a five-dollar bill on the counter, which, with the five given him by witness, made the twenty. This money was then lying on the counter near a box of smoking tobacco. To prevent it from being blown off, the witness placed the tobacco box on it. Bethel, in the mean time, had walked into a back room, the door of which was open. When Dubose placed the money on the counter, he called to Bethel that the money was there ready for him. Dubose then walked into the back room, leaving Mr. G——, the defendant and witness in the saloon. The defendant got up from his seat, went to the tobacco box, filled and lit his pipe, and was the only person near the tobacco box after the money had been placed under it, until Bethel came out of the back room and asked for the money. Being directed by witness, Bethel went to the box and said that the money was not there. White, the defendant, was in the house when Bethel came in and asked for the money. This money was at no time in the possession of the witness. It was taken without the consent of the witness. Witness subsequently paid Dubose $5.

Archie Zarkouski testified, for the State, that he was in Mexico on the 28th day of May, 1884. P. A. Joiner, who worked for him, had charge of his saloon during his absence.

Mr. Dubose testified, for the State, that on or about May 28, 1884, he was in Zarkouski's saloon. Bethel came into that saloon and requested witness to lend him $20. Witness pulled out his pocket-book to comply, but found that he had but $15. He asked Joiner to lend him $5 to make up the amount. Joiner did so, and witness placed the money on the counter, telling Joiner to put it away and give it to Bethel, who in the mean time had gone into the back room. Witness called to Bethel that his money was ready for him, and left. Witness saw the barkeeper, Joiner, put the tobacco box on the money, and saw the ends of the bills protruding from under the box.

Witness saw no one take the money. Joiner has since paid the witness $5, and Mr. Bethel has promised to pay the balance.

Robert Dowe, testified, for the State, that on the evening of May 28, 1884, the defendant came to his saloon and said that if he succeeded in collecting some money due him next day, he would pay a demand of $5.50 the witness held against him. He had at that time $1 or $2 in Mexican money, which he spent. At the same time he told the witness that Bethel had lost $20, and accused him, defendant, of taking it. He also told the witness about the money being placed under the tobacco box, and said that he went to the box and filed his pipe.

C. Fessman testified, for the State, that on the evening of May 28, 1884, the defendant came into his, the witness's, saloon, and the witness gave him change for a pretty well worn five-dollar United States currency bill. Witness turned this bill over to deputy sheriff Charles Decourt. Witness knew nothing of the defendant except by hearsay.

Charles Decourt testified, for the State, that when he heard of the theft, he went to the defendant and told him that if he had taken the money he had better give it up. The defendant replied that he had received some money from Houser, and that Crawley & Barney had paid him some. Barney, he said, gave him $3.85 in American silver. The witness could not say how long it was after the alleged theft that this interview between himself and the defendant occurred. When witness first saw the defendant after the alleged theft, he was at Sumpter's, dancing. He then gave fifty cents or a dollar to Callahan and told him to treat. This action of his excited the suspicion of the witness. Defendant claimed that he got $7 or $8 from Houser. Witness's relations with the defendant are not friendly, but witness had told nothing but the truth.

P. A. Joiner, recalled by the State, testified that the five-dollar bill he got from Fessman looked very like one of the stolen bills, but he could not swear that it was.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

Willson, Judge. By the eighth paragraph of the charge the jury were told that, "if a part of the alleged stolen property was found and identified as such, the theft of the remainder might be

inferred from that fact, if all of the property is shown to have been stolen at the same time and place." This charge was excepted to by the defendant at the time it was given, because it was upon the weight of evidence. We think the exception is well taken. It was an invasion by the court of the exclusive province of the jury, to instruct them as to what inferences might be drawn from the testimony before them. The jury must be left entirely free to draw their own inferences from the evidence, except in cases where the law expressly attaches to certain evidence a particular weight or significance, which is not the case here. Excepting this error, we think the charge of the court is correct and applicable to the facts, but this error, having been promptly excepted to, necessarily demands a reversal of the judgment. (Code Crim. Proc., art. 685; *Buntain* v. *The State*, 15 Texas Ct. App., 485.) The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 26, 1884.]